UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    <u>For Online Publication Only</u>
--------------------------------------------------------------------
ROBERTO LOPEZ PEREZ,

                                        Plaintiff,

        v.-

                                                        **<u>MEMORANDUM & ORDER</u>**
                                                         16-CV-838 (JMA)

ANDREW    SAUL,    *Commissioner    of    Social
Security*,[1]

                                        Defendant.
--------------------------------------------------------------------X

**AZRACK, United States District Judge:**

        Plaintiff Roberto Lopez Perez ("Plaintiff") seeks review of the final determination by the

Commissioner of Social Security (the "Commissioner"), reached after a hearing before an

administrative law judge ("ALJ"), finding that Plaintiff was not eligible for disability insurance

benefits ("DIB") or for supplemental security income benefits ("SSI") under the Social Security

Act (the "Act"). The case is before the Court on the parties' cross-motions for judgment on the

pleadings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is

GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the

case is REMANDED for proceedings consistent with this opinion.

## I.        BACKGROUND

        On January 28, 2013, Plaintiff filed applications for DIB and SSI with the Social Security

Administration ("SSA"), alleging disability as of December 31, 2012, due to depression and back

pain. (<u>See</u> Tr. 120, 153.1) Following denial of his claim, Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 76-77.) Plaintiff and his attorney appeared before ALJ

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Jacqueline Haber Lamkay on September 4, 2014. Also appearing at the hearing was vocational expert Christine Boardman. (Tr. 29-53.) Plaintiff testified with the assistance of a Spanish language interpreter.

Plaintiff was born in 1967 and received a grade school education. (Tr. 34-35.) The record contains conflicting reports as to whether the Plaintiff has a fifth, sixth or seventh grade education but indicates that he has an education of no more than the 7th grade, all completed in Puerto Rico. (Tr. 34–35, 153, 228, 236) He cannot read, write, or speak in English. (Tr. 36, 152) He testified that his past work was as a cook in a deli. (Tr. 38–41.) His earnings records show that he was employed from 1999 to 2011 at The Culinary Studio. (Tr. 38) He testified that he was laid off from his job because of absences. (Tr. 38–39, 41.) He also testified that he was required to stand all day and to lift 50 pounds frequently and 100 pounds on at least one occasion. (Tr. 39, 155.)

In a decision dated October 7, 2014, ALJ Haber Lamkay denied Plaintiff's claim, finding that he was not disabled for purposes of receiving DIB or SSI under the Act. (Tr. 12-28.)

ALJ Haber Lamkay applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits. (Tr. 12-28.) ALJ Haber Lamkay first indicated that Plaintiff meets the insured status requirements through December 31, 2016 and has not engaged in substantial gainful activity since his alleged onset date. (Tr. 17.) Next, at step two, she found that Plaintiff had the following severe impairments: small herniated disc in the thoracic spine and depressive disorder. (Tr. 17.) At step three, ALJ Haber Lamkay determined that Plaintiff's impairments, alone or in combination do not meet or medically equal the severity of any listed impairments. (Tr. 18.)

ALJ Haber Lamkay then addressed step four, first determining Plaintiff's residual functional capacity ("RFC"). She briefly considered Plaintiff's subjective complaints and recited

boilerplate language to discount these complaints. (Tr. 20.)  The ALJ then provided a summary of

Plaintiff's medical records. (Tr. 20-22.)  Ultimately, ALJ Haber Lamkay concluded that Plaintiff

had an RFC to perform a reduced range of light work, with the following additional limitations:

> He can sit and stand/walk six hours in an eight hour day and left/carry ten pounds
> frequently and twenty pounds occasionally.  The [sic] can occasionally climb
> ramps/stairs, stoop, kneel, crouch, and crawl; and can never climb ladders ropes or
> scaffolds.  The claimant must avoid concentrated exposure to vibration and hazards
> such as dangerous moving machinery and unprotected.  The claimant would be
> limited to occupations that be performed using a cane.  He can perform simple,
> routine, and repetitive tasks; capable of a low stress job, defined as only having
> occasional decision making required, occasional change in work setting and no
> strict production pace, meaning work that is checked at the end of the day or
> workweek rather than hourly.  He can frequently interact with the public, coworkers
> and supervisors.  He would also need to change positions every half hour for one
> to two minutes.

(Tr. 19.)  Based on this RFC determination and the testimony of the vocational expert at the hearing,

the ALJ concluded at step four that Plaintiff could not perform his past relevant work. (Tr. 22.)

At step five, the ALJ questioned the vocational expert as to whether a person with RFC to

perform a reduced range of light work with the restrictions listed above could perform jobs

available in substantial numbers in the national economy.  The vocational expert found that the

individual could perform jobs at the light level of ticket taker (DOT 229.587-018), routing clerk

(DOT 222.687-022), and ticketer (DOT 344.667-010).

ALJ Haber Lamkay credited that testimony and found that Plaintiff was not under a

disability as defined in the Act from December 31, 2012 through the date of her decision. (Tr. 23.)

The ALJ's decision became the final decision of the Commissioner when the Appeals

Council denied Plaintiff's request for review. (Tr. 1–7.) This appeal followed.

## II.   DISCUSSION

### A.  Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. §§ 404.1520, 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).)   As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do."  Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999)).

4

B.  **Scope of Review**

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record de novo, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it."  State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990).  An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force."  Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations.  See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

**C.  Analysis**

Plaintiff argues that ALJ Haber Lamkay failed to properly weigh the medical opinion evidence in violation of the "treating physician rule," and did not properly consider in the RFC assessment or the hypothetical questions posed to the vocational expert that the Plaintiff was required to use a cane.

The Court agrees in part with the argument that the ALJ improperly weighed the medical evidence.  The Court also finds that that the ALJ erred by failing to pose a proper hypothetical question to the vocational expert and by relying on testimony from the vocational expert that failed to account for Plaintiffs' inability to communicate in English.  Accordingly, the Court remands this case for further proceedings to allow the Commissioner to address the issues set forth below.

**1.  The ALJ's Weighing of the Medical Evidence**

"The Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017); see also Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order) ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence . . . .'") (quoting 20 C.F.R. § 416.945(a)(3) ).  Accordingly, the RFC assessment is based on a review of the entire record.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record.  Barry, 606 F. App'x. at 622 n.1.

Here, the assessment of the medical opinion evidence was governed by the "treating physician rule" in effect when Plaintiff filed his application. If a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). However, an ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ must provide "good reasons" not to grant controlling weight to a treating physician's opinion. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998). And, when a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, and consider the factors identified in the SSA regulations. Halloran, 362, F.3d at 33; see also 20 C.F.R. §§ 404.1527(c), 416.927(c). The same factors are considered when evaluating the weight to give other medical opinion evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c).

There are medical opinions from four providers in record concerning Plaintiff's mental health issues: Dr. Aparna Udyawar, Plaintiff's treating psychiatrist, (Tr. 399–403); Christine Metzger, a nurse practitioner who also treated Plaintiff, (Tr. 405–09); Mary Galloy, a social worker, (Tr. 313–18); and DDS medical consultant Dr. J. Kelson, who did not examine Plaintiff, but reviewed his medical records, (Tr. 54-59; 60-65.).

ALJ Haber Lamkay gave "some weight," but not great weight, to the opinions of Plaintiff's three treating sources, Dr. Udyawar, Ms. Galloy, and Ms. Metzger, reasoning that the "treatment records do not support the severity of the limitations assessed." (Tr. 21.) The ALJ also gave some weight, but not great weight, to the opinion of the non-examining medical expert, Dr. J. Kelson, because he said the opinion "is consistent with the totality of the medical evidence." (Tr 22.)

As Dr. Udyawar is a "treating physician," ALJ Haber Lamkay was required to provide "good reasons" not to grant controlling weight to his opinion. In March of 2013, Dr. Udyawar completed an assessment which stated that the Plaintiff had poor or no ability to deal with stress and concentrate, and only "fair" ability to follow rules, relate to others, deal with the public, relate predictable with others, and use judgement. (Tr. 224.) ALJ Haber Lamkay's justification for only giving Dr. Udyawar's opinion some weight is a conclusory statement that Dr. Udyawar's opinion was not supported by the treatment records. In making this finding, the ALJ references the fact that "Ms. Galloy, opined satisfactory abilities in activities of daily living (Exhibit 3F, pg. 2-4)" (Tr. 21; see also Tr. 18). A reading of that exhibit, however, does not reflect any finding that the Plaintiff has "satisfactory ability in activities of daily living." Ms. Galloy opined that the Plaintiff has satisfactory ability to function independently (a term too vague on its face to support any finding as to limitations), to maintain personal appearance, and to demonstrate reliability. Ms. Galloway, however, also opined that Plaintiff has less than satisfactory ability to follow rules, relate to others, deal with the public, use judgement, deal with stress, maintain attention, understand and carry out either simple or complex instructions, behave in a stable manner, or relate predictably in social settings. (Tr. 224–226.) An inability to satisfactorily use judgement, deal with stress, and behave in a stable manner is not an indication of a satisfactory ability to perform ordinary activities of daily living. The ALJ's failure to address these aspects of Ms. Galloway's opinion warrants remand.

Remand is also warranted because ALJ Haber Lamkay's finding that the opinion of Dr. Kelson is consistent with the totality of the medical evidence is also not sufficiently supported by the evidence cited in the ALJ's decision. For instance, Dr. Kelson opined that there was "no limitation" in the Plaintiff's ability to maintain attention and concentration. ALJ Haber Lamkay,

however, notes in her decision that there were "pertinent findings upon repeat examinations which have included . . . difficulties concentrating." (Tr. 21.) Additionally, ALJ Haber Lamkay opined that the claimant had "moderate difficulties" with regard to concentration, persistence or pace." (Tr. 18.) ALJ Haber Lamkay's finding that the Plaintiff had at least a moderate limitation in concentration, persistence or pace is inconsistent with Dr. Kelson's opinion that the Plaintiff had no limitation in those areas. In light of this discrepancy, it is not clear how Dr. Kelson's opinion could be consistent with the totality of the medical evidence. On remand, the Commissioner must address this discrepancy and other issues set forth above.

### 2. Issues Concerning the Vocational Expert's Testimony

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry, 606 F. App'x at 622 n.1; 20 C.F.R. § 404.1545(b).

#### i. Plaintiff's Use of a Cane

Plaintiff contends that the ALJ erred because the hypothetical she provided to the vocational expert did not address the fact that Plaintiff would be limited to using one hand while ambulating with a cane and would thus be precluded from performing work at the light level. (ECF No. 17, pg. 19–20.) Plaintiff also asserts that the need to use a cane would automatically preclude all light work. The Court finds both of these arguments unpersuasive.

First, the hypothetical posed to the vocational expert specified that the individual would be limited to occupations that could be performed while using a cane. It was unnecessary for the ALJ's hypothetical to employ the more specific language suggested by Plaintiff.

Second, the need to use a cane would not automatically preclude all light work. See Bonilla-Bukhari v. Berryhill, 357 F. Supp 3d 341 (S.D.N.Y. 2019); Magby v. Colvin, No. 15-CV-285, 2016 WL 4585903 (W.D.N.Y. Sept 2, 2016); Rice v. Comm'r of Soc. Sec., 114 F. Supp. 3d

98 (W.D.N.Y. 2015); <u>Koszuta v. Colvin</u>, No. 14-CV-694, 2016 WL 231383 (W.D.N.Y. Mar. 3, 2016); <u>Simmons v. Colvin</u>, No. 14-CV-694, 2014 WL 104811 (S.D.N.Y. Jan. 8, 2014).  While the use of a cane to ambulate does appear to limit the number of light jobs available, the Court disagrees with Plaintiff's contention that it precludes light work entirely.

<i>ii.  Plaintiff's Inability to Communicate in English</i>

Although not raised by Plaintiff, the Court finds that the vocational expert's testimony, and the ALJ's reliance on that testimony, was flawed in a different respect.

Here, the ALJ determined that the Plaintiff "is not able to communicate in English, and is considered the same way as an individual who is illiterate in English."  (Tr. 22.)  However, the hypothetical that the ALJ provided to the vocational expert was incomplete insofar as it did not explicitly address the fact that the Plaintiff could not communicate in English.  Additionally, according to the DOT, all of jobs cited by the vocational expert that the ALJ ultimately relied on in denying Plaintiff's claim require a level of English proficiency

Once a case reaches Step 5 in the sequential evaluation, the ALJ is required to perform a two-part assessment of the Plaintiff's ability to perform work in the general economy.  First, the ALJ must first consider the physical impairments, age, education, and work experience of the Plaintiff.  The ALJ must then determine what jobs exist in the national economy that the Plaintiff could perform.  42 USC § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.964; <u>Heckler v Campbell</u>, 461 U.S. 458, 460 (1983).  The ability to communicate in English and the ability to read and write are both required to be considered by the ALJ as part of a claimant's education at step five.  20 C.F.R. § 404.1520(f); 20 C.F.R. § 1564; 20 C.F.R. § 416.964; <u>Durakovic v. Comm'r of Soc. Sec.</u>, No. 17-CV-0894, 2018 WL 4039372 (W.D.N.Y. May 30, 2018).

The hypothetical that ALJ Haber Lamkay posed to the vocational expert did not explicitly mention the fact that Plaintiff was found to be unable to communicate in English and had to be considered in the "same way as an individual who is illiterate in English" (Tr. 49). In her hypothetical to the vocational expert, the ALJ included the cursory statement that the vocational expert should consider "a person with the same age, education and work experience as the claimant." (Tr. 49). That statement was vague and insufficient given that Plaintiff's English deficiency. Additionally, the Court notes that each of the three jobs that were cited by the vocational expert in response to the ALJ's hypothetical (ticketer, 229.587-018; routing clerk, 222.687-022, and ticket taker, 344.667-010) are jobs which have a language level of 2. Per the DOT, a level 2 language requirement would require a person to have a 5,000–6,000 word vocabulary, with the ability to look up unfamiliar words in a dictionary, to speak distinctly and clearly using past present and future tenses, and to write compound sentences.

Courts have remanded cases based on vocational expert testimony that relies on jobs requiring language skills where the claimant found to have been illiterate or unable to communicate in English. See Gonzalez-Cruz v. Comm'r of Soc. Sec., 294 F. Supp. 3d 164 (W.D.N.Y. 2018); Yulfo-Reyes v. Berryhill, No. 17-CV-2015, 2018 WL 5840030 (D. Conn. Nov., 8, 2018).

Here, ALJ Haber Lamkay erred by relying upon vocational testimony at Step 5 that failed to take into account the Plaintiff's inability to communicate in English, as was required pursuant to 20 C.F.R. § 404.1564; and 20 C.F.R. § 416.964. Accordingly, remand is also appropriate on that basis.[2]

---

[2] At the hearing, the vocational expert also identified other jobs that an individual with the specified limitations could perform at the sedentary level. (Tr. 51.) The ALJ, however, did not rely on these jobs in rejecting Plaintiffs' claim of disability. Accordingly, the vocational expert's testimony concerning those jobs does not preclude remand here.

### 3.  Other Issues Concerning Remand

The Court denies Plaintiff's request to remand for calculation of benefits because the record does not lead to the definitive conclusion that Plaintiff was disabled.  See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (directing remand for further proceedings where the record was not entirely persuasive with respect to the Plaintiff's disability.)

Finally, the Court notes that Plaintiff is insured for Title II benefits with a date last insured of December 31, 2016.  Plaintiff attained the age of 50 on March 15, 2017, approximately 75 days after his date last insured.  As attaining the age of 50 would place the Plaintiff in a different category pursuant to the Medical-Vocational Guidelines, the Court directs the Commissioner, on remand, to consider non-mechanically applying those Guidelines to Plaintiffs' application.

20 C.F.R. § 404.1563(b) and 20 C.F.R § 416.963(b) direct that the age categories shall not be applied "mechanically in a borderline situation."  Id.  The regulations state that if a claimant is within a few months of obtaining an older category and using the older age or category would result in a finding of disability the ALJ should consider the overall impact of all factors in the case to determine whether the age categories should be applied non-mechanically.  Id.  While the regulations do not state an "outer limit" with regard to a borderline situation, a period of less than three months appears to be within the limits.  See Gravel v. Barnhard, 360 F. Supp. 2d 442 (N.D.N.Y. 2008); Smolinski v Astrue, No. 07-CV-386, 2008 WL 4287819 (W.D.N.Y. 2008); Davis v. Shalala, 883 F. Supp. 838 (E.D.N.Y. 1995).

Accordingly, on remand, the Commissioner should review this case to determine if the age categories should be applied non-mechanically.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this opinion.

On remand, the Commissioner is directed to properly apply the treating physician rule and to more thoroughly explain, in light of the issues raised above, the weight assigned to each of the medical opinions and the reasons for assigning such weights to those opinions. If necessary, the Commissioner should reassess the Plaintiff's RFC in light of the record as a whole. Furthermore, in light of the finding that the Plaintiff is unable to communicate in English, the Commissioner should also reassess the vocational expert's testimony and, if necessary, receive additional vocational expert testimony on this issue. Finally, the Commissioner is directed to review the case to determine whether the age categories should be applied non-mechanically with regard to the Plaintiff's date last insured.

The Clerk of the Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Date: September 30, 2019
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge